22-1214 et al. Food & Water Watch Petitioner v. Federal Energy Regulatory Commission Ms. Doran for the Petitioner, Mr. Edinger for the Respondent, Mr. O'Neill for the Respondent Intervenors. Good morning Ms. Doran, we will hear from you. Good morning. May it please the Court, Aaron Doran on behalf of Petitioner Food & Water Watch. I've reserved two minutes for rebuttal. We are here today because the Federal Energy Regulatory Commission approved the EAST 300 project despite New York State's groundbreaking climate plan and without adequate review of environmental and climate impacts. Today I'll talk about three ways in which the Commission erred. First, the Commission failed in its consideration of all factors related to the public interest and need for the project and specifically failed to give adequate weight to New York's Climate Leadership and Community Protection Act. Second, the Commission failed to assess and determine the significance of the project's impacts on climate change. And third, the Commission failed to adequately evaluate and disclose the project's indirect and climate impacts. For these reasons, Food & Water Watch respectfully requests that the Court vacate and remand the orders under review. Turning first to the Commission's failure to consider the New York Climate Leadership and Community Protection Act adequately in its need determination. The Commission here based its finding on a single precedent agreement and while precedent agreements are important factors under this Court's precedent, the Court has also recognized in the Environmental Defense Fund that they're not always determinative. First, the 1999 policy statement reflects this obligation to consider all relevant factors and in 2022 the Commission recognized that it is short, over-relying on precedent agreements. There, the Commission identified the precise problem here, that if the Commission relies on precedent agreements at the expense of other contrary factors, it reaches the determination on need that's inconsistent with the weight of the evidence. Here, FERC seems unable to even grasp the relevance of the Climate Act in this proceeding. To be clear, the Climate Act is relevant because of its long-term implications. New York is moving away from fossil fuel use and that will implicate demand. Moving away, but Con Ed signed a 20-year contract. Yes, Your Honor. Con Ed did enter into the contract here. In the face of shortages in Westchester County. Correct. Con Ed may have been motivated by short-term constraints to enter into the precedent agreement, but the precedent agreement nevertheless is for a 20-year term and the life of the infrastructure itself will extend beyond that. And that's inconsistent with what will happen with the Climate Act's implementation, with New York seeking to reduce by 40% by 2030, its greenhouse gas emissions. That's just seven... Certificate of public need and necessity. People need gas now. They, Con Ed thinks that's a serious enough problem to commit themselves for 20 years. So sure, the project might last 30 or 40 or 50, but that doesn't bar them from issuing the certificate. Well, Your Honor, respectfully, we're arguing that the Climate Leadership and Community Protection Act should have been given adequate weight in light of its implications on long-term demand. So again, while Con Ed may have been motivated to enter into the precedent agreement based on short-term constraints, it has other options and it has dealt with these issues for the past several years using solutions that are more consistent with the Climate Act. Is your argument that they didn't consider the New York Act at all or they didn't adequately consider it? Because they did discuss it, right? They did not take into consideration the long-term implications on demand. The commission dismissed the Climate Act because it doesn't ban Con Ed from providing gas right now, but respectfully, the commission can't see the forest for the trees here. It is ignoring the monumental shift that's occurring in states like New York that have real climate action on the books to accelerate the transition away from fossil fuels. Rather than give the Climate Act the weight it deserved, the commission simply approved this based on the precedent agreement. Well, but isn't it true that the commission focused on concerns it had about the short-term measures that were being used and had been used for the last few years, trucking, moratoria, etc.? So it's not as though it didn't take into account other concerns that were contrary to policies it thought were important. Isn't that correct? I mean, the record demonstrates that. Your Honor, the record does include assertions by Con Ed about need. It also includes internal snapshots from Con Ed suggesting that need had increased at least 2013. Those projections themselves are inconsistent in the record, and FERC's ultimate determination on need here was based on the precedent agreement. Again, not taking into account what will happen with need over the longer term. I understand your point, but I'm trying to focus on the now aspect, following up on Judge Capsos's question. I didn't see, and maybe I missed, an attack on Con Ed's statements about the situation that it was facing in terms of increased demand and the alternatives it had had to use as sort of fail-safe measures during this period, even assuming New York were to get to the goal that you're talking about. Your Honor, there's no indication in the record, I agree, that there's an attack on Con Ed for the short-term constraints that it's using. We're simply putting forward that the Climate Act needs to be taken into consideration when looking at whether those short-term constraints and other short-term solutions would be adequate as opposed to locking in carbon and fossil fuel infrastructure for the next several decades. So again, rather than giving the Climate Act the weight it deserves in terms of projecting demand over the next several years, the Commission simply approved the project based on the precedent agreement. Respectfully, Your Honor, I'm not sure your question is coming through. Judge Rogers, we're having problems with the audio. If you could just repeat your question, please. Let's just pause the time if we can. Judge Rogers, I'm sorry, we had problems with your audio. If you could repeat your last question. Yes, I'm sorry. I've had repeated problems this morning with the audio. It's just not working. I'm on my iPad because my computer won't hook up. So I apologize, but I don't want to delay this. Judge Katz's question, I think, really covered what I was getting at. And I was just trying to say to counsel, the way I read the record here, and she may have read more of the record than I, there were realities that the Commission was trying to address now. Yes, Your Honor. The issue with that is over the long term, and again, looking at demand with the implementation of the Climate Act, those factors themselves shouldn't outweigh the movement toward lower demand, the economy-wide implications of the Climate Act. Turning, if I may, to FERC's project. The significance determination goes to the very core of NEPA. Here, Chairman Glick said that the significance determination is perhaps the single most important step in informing federal decision-makers and the public of a decision. And here, the significance determination should have been an easy call, especially when you consider that there will be 2.2 million tons per year of carbon dioxide equivalent, even under the Commission's flawed analysis, as compared to the Commission's initial threshold proposed for significance of $100,000. I'm trying to understand this argument. The statute requires a significance finding with respect to whether to do an environmental impact statement or not. Where else does the statute require a significance finding? Yes, Your Honor. So significance is relevant in getting from an environmental assessment to an environmental impact statement. However, NEPA is not an exercise in busywork. The significance determination should actually influence the Commission's decisions, and in making that determination, the Commission should communicate to the public about how it is taking accountability for the climate impacts of the projects it approved. But we've never said, and I don't believe you cited any other court opinions that have said that a significance finding is necessary in some context other than whether or not to do the environmental impact statement. Am I right about that? There's no precedent that says if you've done the environmental impact statement, you still nonetheless have to make a significance finding? Your Honor, there may not be precedent on that specific point, but I would direct the Court to EPA's conclusions here, where EPA found the final environmental impact statement contained insufficient information to assess potentially significant environmental impacts of the proposed action and is inadequate to meet the purposes of the National Environmental Policy Act. So beyond that procedural component, NEPA requires agencies to take that hard look and to make a determination as to whether their projects will have significant environmental impacts. I get that. I mean, that's the core of NEPA, that the agency has to really consider all the relevant factors and take the hard look, but that's different than saying that even if it considers all of the factors, it's still deficient because they didn't say which factor was significant or not significant. That's what I'm trying to get to. It's like, what does it really get you for us to find that there was a significance finding that should have been made that wasn't? Your Honor, again, I would suggest that this is not simply a procedural issue, but a substantive issue under NEPA, that the Commission failed to grapple with whether climate impacts are significant. This project could have had 100 times the impacts that the Commission says it will have, and they would still defer on significance, failing to take accountability for those actual climate impacts that they know, as Chairman Glick said, they know will occur. Simply claiming there's no universal standard, simply trying to avoid conducting this analysis and making this determination based on an ongoing generic proceeding. But the Commission has to comply with NEPA now. We can't come back. The Commission calculated the social cost of carbon. The Commission calculated the amount of greenhouse gas emissions. The Commission did lots of different things. What the Commission said is that ultimately, we don't believe that there is kind of one reliable methodology to determine kind of climate impact. But all of the various different types of methodologies were used by the Commission. They just said that we can't find one that we find is reliable. Is that a fair assessment of the record? The Commission does claim, yes, that they don't have that universal methodology. But as Chairman Glick said, again, a universal methodology is not the standard here. In saying we can't figure out significance, the Commission is refusing to really grapple with the impacts that the project has, the impacts that its approvals are having, waiting for this generic proceeding. So I'm just trying to understand, was there a calculation or methodology that the Commission should have used that it did not use? Well, Your Honor, there were several methodologies that the Commission should have used. And to the extent it did use methodologies like the social cost of carbon, the Commission went only so far and then decided not to say whether that impact is significant. Is there a methodology that they should have used that you asked them to use that they did not use? No, Your Honor, we don't have a specific methodology that FERC needs to use. There are numerous methodologies that the Commission could consider. The Commission could also go back to what it did in the Northern Natural Gas Proceeding. But the problem here is that if you fail to ask them to use a specific methodology, you can't come here now and say, well, they should have used that methodology. Well, respectfully, Your Honor, we did identify the social cost of carbon, but that is not a methodology that the Commission could use. And they calculated the social cost of carbon. They did. And yet, they didn't say whether that was significant. And it's important to note that agencies make these determinations. So we're supposed to overrule their scientific judgment about kind of how reliable that methodology is for this purpose? No, Your Honor. What we're asking the Court to do here is recognize that the Commission failed to consider the important aspect of the project here, which is the significance of the impacts on climate change. It didn't come to a conclusion. And it's going on approving projects without identifying and taking responsibility for whether those projects are having a significant impact on climate. And agencies make these determinations all the time for things outside of climate. They consider any number of environmental factors that have multiple methodologies and use their judgment and experience to get to a determination about the significance of those impacts, which, again, should inform the contours of the project. I see that I'm out of time. I'll give you a couple minutes to make any final points or to cover something that you did not get a chance to. Thank you, Your Honor. First, I will say that with regard to upstream that fact in the record. Second, downstream impacts were also reasonably foreseeable because the Commission knew exactly where the gas was going and exactly how it would be used. And for these reasons, again, Food and Water Watch respectfully requests that the Court vacate and remand the orders. So on the upstream, where the Commission found that we really didn't know where the gas would be coming from because of all of the different lines that could input into the pipeline, if that finding is correct, kind of given our precedent in calculating greenhouse gas emissions, et cetera, associated with upstream effects? Respectfully, Your Honor, if that finding is correct, and Food and Water Watch doesn't believe it is, in this case, Food and Water Watch did raise in its rehearing request the Commission's responsibility to ask for additional information. So the Court doesn't have to reach the same conclusion and take the record as it stands as it did in those previous cases. However, I will say again that EPA told the Commission they could use default assumptions here to evaluate reasonably foreseeable upstream impacts. These impacts are global. The Commission knows it. It doesn't depend on where they occur. And omitting these impacts resulted in a lack of informed decision-making. All right. Judge Rogers, did you have any other questions? No, thank you. Thank you. All right. Thank you. We'll give you a couple minutes on rebuttal. Good morning. Good morning, and may it please the Court. I'm Scott Edgar. I'm for the Federal Energy Regulatory Commission, and thank you for hearing this case this morning. I would like to take the issues in the same order addressed by Food and Water Watch, and I'd like to make a few comments about the need determination. First, I want to discuss the Environmental Defense Fund case cited by my friend for Food and Water Watch. That case is distinguishable from this one in that a single precedent agreement was at issue there with an affiliate, and it is clear from that case that the Court there was concerned in light of those two facts and the fact that there wasn't additional evidence of a growing need in the service area that the Commission hadn't taken seriously issues of self-dealing. That is the opposite of the situation that we have in this case today. Consolidated Edison is not an affiliate of the pipeline. This is an arms-length transaction, and this transaction itself, as this Court has said, and Delaware Riverkeeper, Adelphia, Siding, Minisink, and Myersville, that contract itself is important evidence of need. And as we pointed out in our brief, the need didn't stop there. The Commission went well There are additional facts that play into the plan here, and that is that Consolidated Edison participated in this proceeding and explained that they have had increased load growth, and as a result, they have had to resort to extraordinary measures, such as trucking, compressed natural gas, and imposing a moratoria on new hookups. So the contract is not just a simple contract. There's a lot that goes behind the contract, and that has significant evidence of need here. I would also point out that, and I'm going to make a negative inference here, that the New York Commission is not here today saying that the Commission erred by granting a certificate. That does happen in other cases, and I can cite one, and I don't cite this for precedent, but this is just an example. For example, an order in the Spire case, which this Court reviewed in Environmental Defense Fund, if we look at 164 FERC 61085, paragraph 30, the State Commission there was in front of the Commission saying that the Commission should not approve the project or should not validate the precedent. That is not the case here, and I just cite that not as precedent, but just as an example. I'm making an argument of negative inference that the New York Commission isn't here today saying, no, no, no, don't look at this contract. And the New York Commission, as we pointed out in our brief, is the entity that regulates Consolidated Edison. I don't want to get you off track too much, but I did want to ask you questions about upstream effects, and particularly, even if we take the Commission at its word, or not at its word, we say it was a reasonable conclusion for the Commission to make that we don't know exactly where this gas is coming from. It may not all be coming from the Marcellus Shale. The EPA says that that doesn't matter because greenhouse gas and other impacts aren't localized. But the Commission said, well, we're not going to calculate those because they're not foreseeable because we don't know where the gas is coming from. How are we supposed to reconcile those two conflicting judgments of expert agency, so to speak? And is an EPA a little bit more of an expert on this issue? Confirm, respectfully. The EPA does certainly have expertise, but we are here to review the Commission's orders under the relevant standard of review, arbitrary and capricious. And the Commission has expertise here and is entitled to deference on this question. And I would submit that the Commission was on firm ground when it made the determination that we're talking about, the gas that will be transported by this project can come from a vast swath of geographic location from the Rockies going down to the Gulf Coast. And the Commission said that in rehearing order paragraph 27 at J.A. 435. The Commission also cited a order that was over 10 years old at Tennessee Gas Case 131-61140 at paragraph 18, which made the same point, that the project will allow shippers to have access to vast supply sources. And the Commission also cited the application that Tennessee filed in that docket, that CP09444, that was filed on September, excuse me, July 17, 2009. And the Commission also cited the exhibit to the application Z4 at page 2 and the footnote 4 to that exhibit. That's at J.A. 33. The Commission discussed all this in a footnote to the rehearing order, footnote 74, that's attached to paragraph 27, J.A. 436. So that's a long-winded way, Judge Wilkins, of answering your question, that the Commission here was on solid footing in making the conclusion that the supply sources for this project can come from a vast variety of geographic locations. And based on that, the Commission couldn't tell what the environmental impacts were. And if I could add just one more thing, I would point... Well, I guess let me just try to see if I can simplify my question. Let's suppose that it were undisputed that it were all coming from the Marcellus Shale region. Then you would agree then that the Commission would have had an obligation to look at these indirect upstream effects with respect to that region, right? I'm not sure I would conceive that, Your Honor. And I would point, Your Honor, to Birkhead on that point, where the shipper was a producer. That's an important distinction here. The shipper here is the opposite of that. It's an LDC, and they're going to... Understand, I don't want you to fight my hypothetical. I want you to try to answer my hypothetical. Let's suppose we knew for a fact that all of the gas was coming from a particular region. So wouldn't the Commission, under those circumstances, have an obligation to, for instance, calculate the additional greenhouse gas emissions or other emissions as a result of that increased supply? I don't think that's necessarily true. I think the Commission, and I'd point you, Your Honor, to the final Environmental Impact Statement at page 28, J.A. 258. And there, the Commission staff talks about all the things that are unknown here. And that's the location of the supply source and whether there would be new or existing wells that would be necessary. And under Your Honor's hypothetical, if somehow we knew that the gas would come from a particular region, and again, I believe my purpose of mentioning Burkhead is, I think, given that the shipper there was a producer, that you had perhaps that regional aspect to it. I think it's still unclear, or it would be in this case unclear, whether the supply is coming from new or existing wells. And we don't know that. And we don't know where the location of those wells would be. And what the Commission staff there explained was that the Commission approaches this on a case-by-case basis. And if there are new infrastructures involved, that's a whole new, you would think that would be a whole new different set of environmental impacts because there might be affiliated infrastructure, et cetera. And when the EPA made its comments about upstream greenhouse gases, in its comments that are at J196, and they said that there were these various generic estimates that could be used from the Department of Energy methodologies, you're just saying that the EPA just has that wrong there because those estimates don't really work if we don't know whether there's going to be new wells or not? The result, and let me quickly explain that the Commission did acknowledge EPA's comments at the certificate order, paragraph 55, J0352. The Commission was well aware of EPA's comments and took it seriously. I think what the Commission is saying here is that despite EPA's comments, is that this production would not be causally connected. And that's because, and as the Commission explained, the source is unknown and can actually change. So that undercuts the idea that there's actually a causal relationship between this project and what may have happened in terms of upstream production. All right. Thank you. And if there are no additional questions on that, I might turn to significance of the greenhouse gas emissions. And Judge Wilkins, I want to go back to some of your questions about that. And I think you're right that we start with SC 4332, which says that the agency, if there's a project that's going to significantly affect the environment, then it has to do a report. And then as we cited in our brief, 40 CFR 150216, which says not that the Commission or an agency has to make a significance determination, but that it should study the significance of those impacts. And I would assert, I can go through all the information that's in the record here. The Commission has definitely studied the significance of greenhouse gas emissions by disclosing the quantities of greenhouse emissions, by discussing how those quantities fit in with national and state emissions, by doing the qualitative analysis, and by discussing how those emissions comport with state goals, climate goals. And the only other thing, I see I'm out of time. I have one more. You can make a couple final points. I want to highlight the fact that, and this is at the certificate order, paragraph 84, JA 367. The Commission there finds that this project is environmentally acceptable. And I want to make sure that it's very clear that all Commissioners, although there are concurring opinions in this, no Commissioner dissented from that point. This is an environmentally acceptable project. And in light of the significant evidence of need in this case, all Commissioners felt like this project should go forward. Judge Rogers, did you have any other questions? No, thank you. All right, thank you. We'll hear from Council for Respondent Intervenor. May I please the Court? My name is Brian O'Neill on behalf of the Respondent Intervenors, Tennessee Gas Pipeline Company and Con Ed. I'd like to address a couple of points here. First of all, with respect to need, I think there's just no question in that regard. It's correct that there is a contract, long-term contract, between Con Ed and Tennessee. They're unaffiliated entities. This Court has found that the contract, long-term contract, is sufficient for a demonstration of need in several cases, including many sinks. However, in this instance, the Commission took the additional step of looking beyond the contract, and the record is unrefuted on. I refer you to JA 303 and 315, where Con Ed demonstrated, and this is also unrefuted, that it needs this additional capacity in order to provide service to its existing demand, existing demand that has been growing over the years. It needs it to end reliance on compressed natural gas trucking that it has. The reliability issue is a real one. It affects it during harsh weather, when there's significant snow and ice developments, and trucks may or may not be able to navigate. In addition, the need here demonstrates that Con Ed will be able to lift the temporary moratorium that it has had, and to allow existing customers to switch from fuel oil and propane to statutory obligation to provide service upon request. Finally, the evidence demonstrates from Con Ed's perspective that this additional service that it's getting, this additional capacity, is consistent with its goals in meeting the Climate Act requirements. This is unrefuted evidence. With respect to significance, we agree with your honor that the significant, from the standpoint of the statute, it's required if there is a significance determination, what has to happen is then, not an EA, but an environmental impact statement has to occur. In this case, there was an environmental assessment, there was a draft environmental impact statement, and a final environmental impact statement. This certainly passed muster through this court's precedent, and I'll refer you, as we did on our brief, to the American Bird observatory case. With respect to the upstream issue, the commission was spot on on this one. Tennessee Gas Pipeline Company is a long-line integrated system. It operates on a bidirectional basis. It's a dynamic system. The inputs and outputs vary from day to day, and that certainly affects where the gas comes from with respect to the needs that Con Ed has to meet. Con Ed, for its part, has most, if not all, local distribution companies paying their gas via contracts with marketers. The marketers have portfolios that can come from anywhere in the country. The Tennessee system, by the way, in addition to what the commission cited, they also have sources from Canada. But the marketers also have the ability, under the commission's regulations, to put together, in their own transportation portfolios, the contract demand that their customers have, as well as their own contract pipelines. So the bottom line is that the source of the gas can vary from day to day, week to week. All right, let me just check. Judge Rogers, did you have any questions? Judge Rogers, I don't know if you're on mute. Did you have any questions? Judge Rogers, did you have any questions? No, thank you. All right. Your Honor, one final point, if I may. I would like to advise the Court the project is in service. It will be fully in service. All right, thank you. All right, Ms. Doran, we'll give you three minutes for rebuttal. Thank you. Three points on rebuttal. With regard to upstream impacts, the commission is not on solid footing here. The commission is actually on thin ice. Under the commission's rationale, they would never have to consider upstream impacts if they did not know the exact source of gas, regardless of the project, regardless of the scope of the project. EPA says the commission cannot make an informed decision without these impacts. That's at the record at 300. That goes to the very core of NEPA, and here the commission failed to do it. That's arbitrary and capricious. With regard to significance, the commission claims it does all of these things, but ultimately, it throws up its hands and approves the project anyway. The commission refuses to use a particular method. The commission refuses to go back to its ad hoc analysis of significance that it did in northern natural gas, and is simply going forward without taking accountability for climate impacts. Third, with regard to need and the precedent agreement, again, the commission did not consider projections consistent with the Climate Leadership and to come to grips with this evidence in the record, instead relying on the precedent agreement. Again, the commission identified the problem that occurs here. When it looks at the precedent agreement, it may not give adequate weight to other factors, including here the Climate Act. Thank you. On upstream effects, are you saying that can you, I guess, cite a case either in FERC or decided by our court or another court of appeals that has said that you have to calculate upstream effects where you can't identify the source? Your Honor, there are cases that identify that upstream impacts can be reasonably foreseeable. Here, I am not aware of a case that says when you can't identify the source, but again, we're looking in the context of greenhouse gas emissions and the global impacts this could have. Hasn't our precedent said the opposite in that it's not reasonably foreseeable or either that or it's not, doesn't meet the causation standard if we can't see where the gas is coming from? There have been cases, including FERC had, including Food and Water Watch, where discussions of reasonable foreseeability and causation were created. Here, though, the commission is undoubtedly a cause of the indirect impacts of the projects it approves. It could have chosen to deny this project based on climate impacts had it gone far enough to determine the significance of those impacts. So they are causally connected. And again, I would very much encourage the court to look at EPA as the climate expert agency as to whether they are reasonably foreseeable, even if you cannot pinpoint the exact source of gas over the lifetime of the project. What's your best case for us to find that it's reasonably foreseeable upstream effect, even if we can't identify the source? Your Honor, that is an excellent question, and I'm sorry I don't have a case for you on that. But again, looking at the context of these impacts and the global implications, I would encourage the court and encourage the commission to take those factors into account. And again, without considering those factors, according to EPA, we cannot make an informed decision. Judge Rogers, did you have any questions? No, thank you. Thank you. We'll take the case under submission.
judges: Wilkins, Katsas, Rogers